IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE D. WILMINGTON, ) | |
| ) | |
| Plaintiff, ) | No. 05 C 4754 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| SBC, A.K.A. ILLINOIS BELL TELEPHONE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicole Wilmington filed a four-count complaint against defendant SBC, also known as Illinois Bell Telephone Company ("Illinois Bell"), alleging: sex discrimination and sexual harassment in the form of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq.("Title VII") (Count I); retaliation in violation of Title VII (Count II); violation of her rights under the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et seq. ("ADA") (Count III); and violation of her rights under the Family and Medical Leave Act of 1992, 29 U.S.C. 2101 et seq. ("FMLA") (Count III). Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. Defendant has also moved to strike portions of plaintiff's L.R. 56.1 Statement of Facts. For the reasons discussed below, defendant's motion to strike is granted in part and denied in part, and defendant's motion for summary judgment is granted.

# FACTS[1]

## Plaintiff's Employment History

Plaintiff has been employed by defendant as a telecommunications specialist since July 31, 2000, a position she still holds, at the Hi-Cap Test Center in Chicago.[2] In that position, plaintiff receives telephone calls from customers and technicians and uses a computer at her desk to test phone lines for problems. Employees in plaintiff's position are required to enter codes into defendant's computer system at all times regarding the work they are doing, which allows supervisors to monitor employees and the status of their work tickets.

During her time with Illinois Bell, plaintiff has been supervised by Joyce Maxwell, William Purnell, and Kevin Parker ("Parker"), who supervised plaintiff from February 2004 until early 2006. Throughout her employment with defendant, Parker and other supervisors issued plaintiff numerous written warnings and suspensions from work for poor job performance. Prior to February 2004, plaintiff had five separate "Discussion Documents" regarding her job performance placed in her personnel file. Between March 2004 and March 2005, Parker issued fourteen separate warnings and counseling documents regarding plaintiff's job performance, all of which were placed in her personnel file.

Plaintiff had a difficult working relationship with Parker. According to plaintiff, Parker called her on her mobile phone four or five times while she was on leaves of absence. Parker also followed plaintiff to the bathroom on one occasion and asked her why she was leaving her work station. On two occasions, defendant rearranged the desks of the telecommunications

---

[1]The facts are taken from the parties' L.R. 56.1 Statements and accompanying exhibits.

[2]Plaintiff also worked as a realtor in 2004 and 2005.

2

specialists, putting plaintiff's desk closer to Parker's. Plaintiff felt that she was moved so that Parker could monitor her work more closely than that of other employees. Two or three times, Parker assigned plaintiff work that other employees had already started. According to plaintiff, Parker occasionally stood too close to her while she sat in her chair, which resulted in his genitals being "too close" to her face. Plaintiff never asked Parker to move or told anyone about this problem. Finally, Parker yelled at plaintiff once or twice a week and once told her that he wanted to give her a "pink slip." According to plaintiff, she never felt that Parker threatened her physical safety, and she felt that all other telecommunications specialists, both male and female, were treated better than she was.

On March 21, 2005, Parker placed plaintiff on a performance improvement plan ("PIP") for: (1) failure to meet productivity standards; (2) indications that she was using her work telephone for numerous personal calls; (3) improper handling of work tickets; and (4) unsatisfactory attendance. At the meeting regarding her PIP, plaintiff told Parker that she "[did] not care about the center objectives." On April 25, 2005, Parker met with plaintiff to tell her she had not met her PIP expectations. Parker extended the PIP for two weeks, but he did not take disciplinary action.

On June 15, 2005, Ami Shah, a manager who also oversaw plaintiff, counseled her regarding proper customer communication and put an "employee discussion form" documenting the conversation in plaintiff's personnel file. On July 12, 2005, Georgeen Galli ("Galli"), a floor supervisor, observed plaintiff socializing after picking up her work tickets. When Galli approached plaintiff to discuss the matter, plaintiff told to her to "get away from [her] desk" and

to "step away." Plaintiff also said that she "didn't want to have this conversation." Galli told plaintiff, "We'll have this conversation," and plaintiff responded, "No, we won't."

On July 25, 2005, Parker observed plaintiff using the Internet and making what he believed was a personal phone call. Parker told plaintiff not to use the Internet for the remainder of the day, but he later received a report from two other managers that they had observed plaintiff on the Internet during work hours. Parker suspended plaintiff for four days and 2.3 hours for insubordination.

Plaintiff's Medical Condition

Plaintiff has diabetes and regulates her blood sugar by controlling food intake and using insulin.[3] According to plaintiff, her diabetes affects her ability to sit for prolonged periods, eat, and sleep. Plaintiff's diabetes affects her ability to work only when her blood sugar is not under control. Plaintiff is able to take care of her children, do household chores, and go to the grocery store. According to plaintiff, defendant failed to accommodate her disability by disciplining her for taking leave and for failing to provide her with FMLA leave as she requested.

On February 27, 2004, plaintiff left work for thirty-five minutes to pick up an insulin prescription from a drug store near her office. According to plaintiff, she was disciplined for leaving. Defendant, however, asserts that Parker disciplined plaintiff (by issuing a writeup) not because she left to fill a prescription, but because on her time sheet, she coded her 35 minutes away from her desk as a "bathroom break." Plaintiff also claims that in October 2004, defendant

---

[3]Plaintiff also has a thyroid condition that makes her somewhat tired, but has no other effect on her daily life. Plaintiff takes medication for this condition.

4

denied her 30 days of non-FMLA leave to attend several doctors' appointments and receive training on her insulin pump. Defendant instead gave plaintiff two weeks of leave and allowed her to receive insulin pump training at work during her breaks. Plaintiff missed no doctor's appointments and used some of her two weeks to attend additional insulin pump training outside of work.

Defendant provided plaintiff with 150 days of FMLA leave between August 18, 2002, and August 18, 2005, the date on which plaintiff filed the instant suit. Twice in 2005, the FMLA Processing Unit ("FPU") denied plaintiff's requests for FMLA leave. Defendant initially considered plaintiff's absences for those days to be unexcused and issued her disciplinary suspensions. The FPU, however, subsequently approved plaintiff's FMLA leave requests, and defendant rescinded plaintiff's suspensions with full back pay.

## DISCUSSION

### Motion to Strike Portions of Plaintiff's L.R. 56.1 Statement

Defendant has moved to strike several portions of plaintiff's L.R. 56.1 statement, for various reasons. Defendant first argues that multiple paragraphs in that L.R. 56.1 statement are supported by affidavits that are unsworn and not made "under penalty of perjury" as required by 28 U.S.C. 1746. Plaintiff's claims that defendant is simply being "hyper-technical" is incorrect. This court has held previously that it "may not consider an unsworn declaration unless it subjects the declarant to penalties of perjury." Trapaga v. Central States Joint Board Local 10, 2007 WL 1017855, *5 (N.D. Ill. Mar. 30, 2007). The court therefore strikes paragraphs 100-04, 106, 108,

110-11, 113-15, and 117 of plaintiff's L.R. 56.1 Statement, because they are supported by unsworn affidavits that do not subject the declarants to penalties of perjury.

Defendant next asks the court to strike paragraphs 82, 84, 92-95, 97-98, 100-02, 104, 106, 110-11, 113-15, and 117 because they are comprised of conclusory legal or factual generalizations or are unsupported by appropriate evidentiary foundation. As defendant correctly asserts, legal conclusions are impermissible in L.R. 56.1 statements. See, e.g., RJB Properties, Inc. v. Board of Ed. of the City of Chicago, 2006 WL 224101, *1 (N.D. Ill. Jan. 24, 2006). Additionally, conclusory assertions of fact are similarly inappropriate. See, e.g., U.S. Neurosurgical, Inc. v. City of Chicago, 2006 WL 752970, *4 (N.D. Ill. Mar. 21, 2006). The court has reviewed plaintiff's L.R. 56.1 Statement, and defendant is correct that plaintiff makes both legal conclusions and conclusory assertions of fact in the paragraphs noted by defendant. For that reason, those paragraphs will be stricken.

Defendant next asks the court to strike those statements of fact made by plaintiff that lack sufficient evidentiary foundation. The testimony of a witness can establish a L.R. 56.1 statement of fact only when that witness has sufficient personal knowledge of the fact asserted. Neuma, Inc. v. Wells Fargo & Co., 2006 WL 3393690, *9 (N.D. Ill. Oct. 19, 2006). Again, the court has reviewed plaintiff's 56.1 Statement, and defendant is correct that many of these statements lack sufficient evidentiary foundation. The court will therefore not consider any statement supported by a witness who lacks personal knowledge of the fact at issue.

Defendant asks the court to strike paragraph 81 of plaintiff's L.R. 56.1 statement because it fails to comply with the requirements of the local rule. The paragraphs reads, in its entirety,

"See response to paragraphs 3, 5, 23, 29, 30, 33, 47, and 50 above." Defendant is not able to respond to such a "statement" in any meaningful manner, and the paragraph is therefore stricken.

Defendant next asks the court to strike the first sentence of paragraph 113, which states that "it was [Ruiz's] opinion that Parker had a personal vendetta against Plaintiff." This statement is inadmissible as opinion testimony under Fed. R. Evid. 701 and is therefore stricken.

Next, defendant asks the court to strike paragraphs 82, 84-85, 87, 90, 92, 93, 96-99, 103-04, and 108 because they fail to cite to pertinent factual evidence supporting their assertions. The court has reviewed these statements and finds plaintiff's citations to be sufficient. For that reason, the court will not strike these paragraphs for improper citations.

Finally, defendant asks the court to deem paragraphs 3, 23, 29-30, 47 and 50 of its own L.R. 56.1 Statement as admitted because plaintiff's responses do not contain relevant evidence supporting her denials as required by the rule. See, e.g., Jupiter Aluminium Corp. v. Home Ins. Co., 225 F.3d 868, 871 (7th Cir. 2000). The court has reviewed plaintiff's responses to these statements and agrees that plaintiff has not provided relevant evidence to support her denials. For that reason, the court deems those paragraphs fully admitted.

## Motion for Summary Judgment

Defendant has filed for summary judgment. Under Fed. R. Civ. P. 56(c), a court should grant a motion for summary judgment if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of material fact. See Celotrex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden

7

then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

Count I: Sex Discrimination

Plaintiff alleges in Count I that defendant violated Title VII by discriminating against her based on her gender.[4] To establish discrimination on the basis of sex, plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was meeting legitimate job expectations; (3) she suffered an adverse employment action; and (4) other similarly situated employees, not members of a protected class, were treated more favorably. Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir. 2002).

Assuming that plaintiff can establish the first three prongs of the test, she has conceded that defendant never disciplined her based on her gender. Plaintiff therefore cannot establish that other employees were treated more favorably because they were not in her protected class. For that reason, the court grants defendant's motion for summary judgment as to Count I.

---

[4] Plaintiff originally included in her complaint the claim that defendant subjected her to a hostile work environment created by Parker's sexual harassment. In her response to defendant's motion for summary judgment, plaintiff concedes that she cannot demonstrate any sexual harassment and "no longer seeks to pursue a claim of sexual harassment." For that reason, the court will address only plaintiff's claim of sex discrimination.

8

Count II: Retaliation

Count II of the complaint alleges that defendant retaliated against plaintiff in violation of her rights under Title VII by disciplining and harassing her for making an external discrimination complaint to the EEOC.[5] A plaintiff may pursue a retaliation claim by presenting either direct evidence or indirect evidence. See Haywood v. Lucent Tech., Inc., 323 F.3d 524, 531 (7th Cir. 2003). Because plaintiff has not presented any direct evidence of causal connection between her protected activity and her discipline or harassment, the court assumes that she is proceeding under the indirect method of proof. Under that method, plaintiff can establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected activity (filing an EEOC charge); (2) she performed her job satisfactorily; (3) she suffered an adverse employment action despite her satisfactory job performance; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Id. If plaintiff can establish a prima facie case, the burden then shifts to defendant to articulate a legitimate, non-discriminatory reason for her adverse employment action See, e.g., Clay v. Holy Cross Hospital, 253 F.3d 1000, 1005 (7th Cir. 2001). Defendant is entitled to summary judgment if plaintiff fails to rebut defendant's reasoning. See, e.g., Fulka v. Northwestern Medical Faculty Foundation, 2007 WL 2404597, *6 (N.D. Ill. Aug. 14, 2007).

---

[5]As defendant points out, Plaintiff did not raise the issue of retaliation in the claim she filed with the EEOC on March 15, 2005, and she is therefore barred from claiming retaliation based on events that occurred prior to that date. See, e.g., Cheek v. Peabody Coal Co., 97 F.3d 200, 203 (7th Cir. 1996) ("Not having raised the claim or even its seeds before the EEOC, [plaintiff] was not entitled to bring it in her Title VII action."). Plaintiff is therefore entitled to base her retaliation claim only on events that took place between March 15, 2005 and August 18, 2005, the date on which she filed the instant suit.

Between March 15, 2005, the date on which plaintiff filed her EEOC charge, and August 18, 2005, the date on which plaintiff filed the instant lawsuit, she experienced only one adverse employment action: a four-day suspension for insubordination on July 25, 2005.[6] Assuming that plaintiff performed her job satisfactorily, which defendant disputes, and that plaintiff has identified a similarly situated employee who was treated more favorably, which defendant also disputes, defendant has presented a legitimate reason for plaintiff's suspension: her insubordination. Plaintiff has presented no evidence to rebut defendant's assertion that Parker suspended her for disobeying his orders, and for that reason, the court grants defendant's motion for summary judgment as to Count II.

Count III: ADA

Plaintiff alleges in Count III that defendant violated her rights under the ADA by failing to reasonably accommodate her disability. Under the ADA, "an employer must make 'reasonable accommodations' to a disabled employee's limitations, unless the employer can demonstrate that to do so would impose an 'undue hardship.'" 42 U.S.C. 12112(b)(5)(A); EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 802 (7th Cir. 2005). To establish a prima facie case for

---

[6]Plaintiff experienced several other employment actions during this period: two "employee discussion forms" placed in her file; placement on a PIP; and a one-day suspension that was later rescinded. None of these actions constitutes an "adverse employment action" for purposes of a Title VII retaliation claim. See, e.g., Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); Lasisi v. Motorola, Inc., 2005 WL 2240109, *3 n.2 (N.D. Ill. Sept. 14, 2005) (a PIP is not an adverse employment action); Weathers v. Illinois State Police, 2006 WL 1594044, *2 (N.D. Ill. June 6, 2006) (rescinded one-day suspension not an adverse employment action).

failure to accommodate, plaintiff must show that: (1) she is a qualified person with a disability; (2) defendant was aware of the disability; and (3) defendant failed to provide an accommodation for that disability. Id.

In the instant case, plaintiff has diabetes and regulates her blood sugar with an insulin pump. According to plaintiff, her diabetes interferes with her ability to undertake major life activities, including working. Assuming, then, that plaintiff's diabetes is a disability as defined by the ADA, defendant at no point failed to accommodate her. Defendant provided plaintiff with 150 days of FMLA leave, gave her two weeks of leave to attend doctors' appointments, and allowed her to receive insulin pump training at the office. Because defendant did not fail to accommodate plaintiff, the court grants defendant's motion for summary judgment as to Count III.

Count IV: FMLA

Count IV of the complaint alleges that defendant violated plaintiff's rights under the FMLA by failing to allow her to take time off for reasons related to her disability. To establish a violation of her rights under the FMLA, plaintiff must show that: (1) she is an eligible employee, which means she worked for defendant for at least twelve months and worked at least 1250 hours for defendant in the twelve-month period preceding the request for leave; (2) her employer is an entity covered by the statute; (3) plaintiff was entitled to leave under the statute b/c of a "serious health condition"; and (4) defendant was aware of plaintiff's need for leave but failed to provide it. 29 U.S.C. 2611(4); Lozano v. Kay Mfg. Co., 2004 WL 1574247, 1 (N.D. Ill. July 12, 2004).

11

Defendant does not dispute that plaintiff has met the first three prongs of the test. The fourth prong, however, requires plaintiff to show that defendant failed to provide her with requested FMLA leave. Plaintiff claims that she was denied FMLA leave for February 9-10, 2005 and July 11, 2005. Defendant concedes that it originally denied such leave, for which plaintiff then received suspensions for her absences. Subsuquent to the filing of the instant lawsuit, however, defendat approved plaintiff's FMLA leave and rescinded her suspensions with full back pay. Because plaintiff has suffered no damages as a result of defendant's retroactive approval of her leave, plaintiff's FMLA claim is moot. See, e.g., Cianci v. Pettibone, 152 F.3d 723, 728-29 (7th Cir. 1998). For that reason, the court grants defendant's motion for summary judgment as to Count IV.

## CONCLUSION

For the reasons discussed above, defendant's motion to strike is granted in part and denied in part, and defendant's motion for summary judgment is granted.

ENTER: February 27, 2008

Robert W. Gettleman
United States District Judge